Nott, J.,
dissenting:
There had been a contract between the parties which broke down because the claimant was unable to perform. The reason of his inability was that the Illinois Central Railroad, which the defendants controlled, would not, at the time, carry private freight. The claimant went to the contracting quartermaster, and told him, whereupon they made a new contract, which is the contract in suit.
This new contract stands expressed partly in the words of a witness and partly in a written order from the quartermaster to the defendants’ transportation agent, the Illinois Central Railroad. The words of the witness, that is to say, the conversation of the parties, did not, of themselves, niake a contract, but the deficiency was filled by the written order, which was a part of the transaction, and was given to the claimant with the intent that he should act upon it, and with regard to which both parties did act.
This contract, in part consisting of conversation and in part reduced to writing, was for the sale and delivery of 18,000 bushels of corn at Manteno, Illinois, subject, nevertheless, to weight and inspection by the receiving officer of the Quartermaster Department, on arrival at Cairo. “ I have purchased of G. H. Adams,” are the words of the written order, “at Manteno, Illinois, for the use of the United States Government, 18,000 bushels of earn, which I loish you to deliver at Cairo.” The claimant acted on its terms and delivered the corn at Manteno; the Illinois Central Railroad acted on its terms and received the freight: the defendants acted on its terms and paid the railroad company for the transportation. The written order was not addressed *442 to the contractor, but was delivered to him with the intent that he should act upon it, and he did so act. It being a part of the transaction, was a part of the agreement.
The facts, as they are found in this case,' are not ultimate facts in the nature of a special verdict, to which a court can apply the law, but circumstantial evidence from which a jury must deduce ultimate facts. As I deduce them, they<are these:
1. The corn was delivered at Manteno under and in jrarsuance of the written order, and was in good, sound, merchantable condition.
2. The railroad company received and accepted the corn under and in pursuance of the written order, and transported it to Cairo, and the contractor exercised no ca,re or control over it after its delivery at Manteno.
3. The corn was spoiled partly while in transitu, but chiefly after its arrival at Cairo, and the cause of the loss was the excessive heat of the weather, coupled with the fact that the corn was left on board of the cars, which, amid the circumstances, constituted an exposed and dangerous situation.
4. The corn might have been saved if it had been promptly and properly cared for on its arrival at Cairo, but the defendants’receiving officer there took no steps toward saving it, nor did he notify the contractor of its exposed condition.
From these facts I draw the following conclusion of law:
The defendants were entitled to have the corn weighed and inspected by their receiving quartermaster at Cairo, and if it did not pass his inspection, to throw it back upon the claimant; but, while it was in their custody and under their control, they were bound to exercise over it ordinary care; and they were also bound to have'it promptly inspected, and, if rejected, to return it to the claimant at Manteno, or at least to immediately notify him of its rejection. Haviug failed in all of these obligations, they thereby become responsible for its loss; and the claimant should recover the contract price, being also the quantum valébat of the entire amount by him delivered, to wit, 18,000 bushels, at $1,30 per bushel, amounting to $23,400,